1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A. KYLE EVERETT,<br><br>Plaintiff,<br><br>v.<br><br>ART BRAND STUDIOS, LLC, et al.,<br><br>Defendants. | Case No. 16-CV-01322-LHK<br><br>**ORDER GRANTING MOTION TO WITHDRAW REFERENCE**<br><br>Re: Dkt. No. 1 |

Plaintiff A. Kyle Everett, acting as the Chapter 7 Trustee ("Trustee") for the bankruptcy

estate of Pacific Metro, LLC ("Pacific Metro"), filed a complaint against six defendants in the

United States Bankruptcy Court for the Northern District of California.  Three of those

defendants—Mark Mickelson ("Mickelson"), Art Brand Studios, LLC ("Art Brand Studios"), and

Art Brand Retail LLC ("Art Brand Retail") (collectively, "Defendants")—move for withdrawal of

the reference from the Bankruptcy Court to this Court.  Pursuant to the Bankruptcy Local Rules,

no hearing was held.  *See* Bankr. L.R. 5011-2; Civil L.R. 16-4 (noting appeals from the

Bankruptcy Court are governed by the Bankruptcy Local Rules).  Having considered the

submissions of the parties, the relevant law, and the record in this case, the Court hereby

GRANTS Defendants' motion to withdraw the reference.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.      BACKGROUND

### A. Factual Background

Before filing for bankruptcy protection, Pacific Metro manufactured, distributed, and sold art and art-based products licensed from various artists, including primarily Thomas Kinkade ("Kinkade").  ECF No. 1-2 ("Compl."), ¶ 10.  By 2008, Pacific Metro was in financial distress and unable to pay its debts.  *Id.* ¶ 11.

On June 2, 2010, Pacific Metro filed for bankruptcy protection under Chapter 11 of the bankruptcy code, Compl. ¶ 15, which allows a corporation to reorganize its debts while continuing to operate, *see* 11 U.S.C. §§ 1101–1174.  To proceed under Chapter 11, a debtor corporation must propose a reorganization plan to repay or adjust its debts.  *Id.* § 1123.  If the Bankruptcy Court confirms the reorganization plan, the debtor corporation receives a discharge of debt according to the plan.  *See id.* § 1129 (requirements for plan confirmation); § 1141(d)(1) (discharge of debt).  The debtor corporation is bound by the provisions of the reorganization plan and required to make payments on its debts in accordance with the plan.  *Id.* § 1142.  In the instant case, the Bankruptcy Court confirmed Pacific Metro's reorganization plan on July 19, 2011.  Compl. ¶ 15.  After confirmation, Pacific Metro continued to operate pursuant to the terms of the reorganization plan.

On April 6, 2012, the artist Kinkade died.  *Id.* ¶ 18.  Upon Kinkade's death, the proceeds of two insurance policies totaling approximately $60 million were paid to Pacific Metro's parent company, Windermere Holdings, LLC ("Windermere"), and thereafter distributed to Kinkade's wife, Nanette Kinkade ("Nanette"), and the Kinkade Family Trust.  *Id.* ¶¶ 4, 18.  These two insurance policies were originally taken out on Kinkade by Pacific Metro but transferred to Windermere in 2008 (the "Policy Transfers").  *Id.* ¶¶ 13–14.  According to the Trustee, during the Chapter 11 proceedings Pacific Metro falsely represented that Pacific Metro maintained the two insurance policies on Kinkade even after the Policy Transfers.  *Id.* ¶ 16.

In early 2015, Defendant Mickelson purchased Windermere and, through that purchase, became an officer and/or director of Pacific Metro.  *Id.* ¶ 19.  Because Pacific Metro remained in financial difficulty, Mickelson allegedly "attempted to renegotiate the terms of the

2

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

1      [reorganization] Plan with [Pacific Metro's] largest unsecured creditors from approximately

2      February 2015 to March 2015." *Id.* ¶ 20.  When negotiations were unsuccessful, Mickelson

3      allegedly transferred Pacific Metro's business operations to an entity controlled by Mickelson,

4      Defendant Art Brand Studios.  *Id.* ¶ 21.  Around that time, Mickelson also transferred the business

5      operations of two art galleries owned and operated by a subsidiary of Pacific Metro to a second

6      entity controlled by Mickelson, Defendant Art Brand Retail.  *Id.* ¶¶ 22–23.  According to the

7      Trustee, Mickelson "stole [Pacific Metro's] business operations and staff in an attempt to avoid

8      making the payments required under [Pacific Metro's] Plan."  *Id.* ¶ 24.

9          On June 30, 2015, the Bankruptcy Court granted Pacific Metro's motion to convert the

10     bankruptcy from Chapter 11 to Chapter 7.  *See* 11 U.S.C. § 1112 (providing for conversion of

11     Chapter 11 case to Chapter 7).  Unlike Chapter 11, a Chapter 7 bankruptcy results in the end of the

12     debtor corporation's business operations and liquidation of the debtor corporation's assets.  *See* 11

13     U.S.C. §§ 701–784.  A Chapter 7 bankruptcy trustee is appointed, who gathers and sells the debtor

14     corporation's nonexempt assets and uses the proceeds of such assets to pay the debtor

15     corporation's creditors in accordance with provisions of the Bankruptcy Code.  11 U.S.C. §§ 701,

16     704.  Here, according to Defendants, the Trustee sold Pacific Metro's inventory and equipment to

17     Art Brand Studios.

18         **B.  Procedural History**

19         On December 17, 2015, the Trustee filed an adversary proceeding in Bankruptcy Court,

20     ECF No. 1-2, which is "essentially [a] full civil lawsuit[] carried out under the umbrella of the

21     bankruptcy case," *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694 (2015).  The Trustee alleges

22     five causes of action against six defendants.  The first, second, and third causes of action are

23     brought against Windermere, Nanette, and the Kinkade Family Trust and seek to avoid the

24     allegedly fraudulent Policy Transfers.  Compl. ¶¶ 28–41.  The fourth cause of action, against

25     Defendant Mickelson, is for breach of fiduciary duty and usurpation of corporate opportunity.  *Id.*

26     ¶¶ 42–46.  The fifth cause of action asserts that Art Brand Studios and Art Brand Retail

27     intentionally interfered with Pacific Metro's prospective economic advantage.  *Id.* ¶¶ 47–56.  Both

28
       3
       Case No. 16-CV-01322-LHK
       ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California

1    the fourth and fifth causes of action arise out of the 2015 transfer of Pacific Metro's business

2    operations and art gallery operations to Art Brand Studios and Art Brand Retail.

3         On March 17, 2016, Defendants filed the instant motion to withdraw the reference as to the

4    fourth and fifth causes of action.  ECF No. 1 ("Mot.").  The Trustee opposed the motion on March

5    31, 2016, ECF No. 3 ("Opp."), and filed a request for judicial notice, ECF No. 3-1 ("Tr. RJN").

6    Defendants replied on April 14, 2016.  ECF No. 4 ("Reply").

7         On May 19, 2016, Defendants filed a request for judicial notice drawing the Court's

8    attention to the Bankruptcy Court's May 19, 2016 order granting Defendants' motion to dismiss

9    with leave to amend.  ECF No. 5 ("Defs. RJN").[1]  In the May 19, 2016 order, the Bankruptcy

10   Court found that "the Fourth and Fifth Causes of Action are factually, legally, and temporally

11   distinct from the First through Third Causes of Action" and thus "are not properly joined in this

12   adversary proceeding."  *Id.* at 2.  Accordingly, the Bankruptcy Court severed the fourth and fifth

13   causes of action into a new adversary proceeding.  *Id.*

14   **II.    LEGAL STANDARD**

15        District courts have original jurisdiction over "all civil proceedings arising under title 11,"

16   which is the Bankruptcy Code, as well as over cases "arising in or related to cases under title 11."

17   28 U.S.C. § 1334(a)–(b).  However, the district court's jurisdiction is not exclusive, and each

18   district court may refer such proceedings to a bankruptcy judge.  28 U.S.C. § 157(a); *see also Sec.*

19   *Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th

20   Cir. 1997).  In the Northern District of California, all cases and proceedings arising in or related to

21   a bankruptcy case are automatically referred to the Bankruptcy Court.  Bankr. L.R. 5011-1(a).

22        There are two circumstances under which this automatic reference to the Bankruptcy Court

23

24   [1] The Court GRANTS the parties' unopposed requests for judicial notice.  The parties request
     judicial notice of documents filed in Pacific Metro's bankruptcy case and in the adversary
25   proceeding against Defendants.  *See* Tr. RJN; Defs. RJN.  These documents are judicially
     noticeable.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)
26   (holding that "court filings and other matters of public record" are subject to judicial notice); *see*
     *also* Fed. R. Evid. 201(b) (noting the court may judicially notice facts not subject to reasonable
27   dispute that "can be accurately and readily determined from sources whose accuracy cannot
     reasonably be questioned").

28                                                         4
     Case No. 16-CV-01322-LHK
     ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California

1    is withdrawn for the case to proceed in district court.  First, withdrawal is mandatory "if the court

2    determines that resolution of the proceeding requires consideration of both title 11 and other laws

3    of the United States regulating organizations or activities affecting interstate commerce."  28

4    U.S.C. § 157(d) (emphasis added).  In other words, withdrawal is required "in cases requiring

5    material consideration of non-bankruptcy federal law."  *Sec. Farms*, 124 F.3d at 1008.  While the

6    Ninth Circuit has not further defined what constitutes "material consideration of non-bankruptcy

7    federal law," other courts have found that mandatory withdrawal is proper only where the question

8    of non-bankruptcy federal law "require[s] the interpretation, as opposed to mere application, of the

9    non-title 11 statute."  *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996); *see also*

10   *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) ("[Mandatory withdrawal] is

11   reserved for cases where substantial and material consideration of non-Bankruptcy Code federal

12   statutes is necessary for the resolution of the proceeding."); *In re Tamalpais Bancorp*, 451 B.R. 6,

13   8 (N.D. Cal. 2011) (collecting cases).

14        Second, withdrawal may be permissive.  "[T]he district court may withdraw, in whole or in

15   part, any case or proceeding . . . on timely motion of any party, for cause shown."  28 U.S.C.

16   § 157(d).  "In determining whether cause exists, a district court should consider the efficient use of

17   judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the

18   prevention of forum shopping, and other related factors."  *Sec. Farms*, 124 F.3d at 1008.  For

19   either permissive or mandatory withdrawal, "[t]he burden of persuasion is on the party seeking

20   withdrawal."  *In re Tamalpais*, 451 B.R. at 8.

21   **III.    DISCUSSION**

22        Defendants contend that permissive withdrawal is warranted as to the fourth and fifth

23   causes of action alleged in the Trustee's adversary proceeding.  Accordingly, the Court addresses

24   how withdrawal will affect "the efficient use of judicial resources, delay and costs to the parties,

25   uniformity of bankruptcy administration, the prevention of forum shopping, and other related

26   factors."  *Sec. Farms*, 124 F.3d at 1008.

27

28
     5
     Case No. 16-CV-01322-LHK
     ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California

### 1. Efficiency

In assessing efficiency, the Court considers whether the issues on which the Bankruptcy Court has jurisdiction to enter final judgment predominate with respect to the underlying complaint. *Sec. Farms*, 124 F.3d at 1008. Because bankruptcy judges are not Article III judges, "the Constitution limits their ability to adjudicate—i.e., to render a final judgment—to issues that are at the 'core' of the bankruptcy power." *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009). For matters that are "non-core," a bankruptcy judge may make only proposed findings of fact and conclusions of law to the district judge, who reviews all non-core matters de novo. 28 U.S.C. § 157(c)(1). Thus, whether the Bankruptcy Court can enter final judgment turns principally on whether a claim is core or non-core. *Id.* § 157.

Core proceedings are "those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011); *see also* 28 U.S.C. § 157. A non-exhaustive list of matters that are considered core is found in 28 U.S.C. § 157(b)(2). As relevant here, § 157(b)(2)(A) is a "catch all" provision that states that "matters concerning the administration of the estate" are core. 28 U.S.C. § 157(b)(2)(A). The Ninth Circuit narrowly interprets this "catch all" provision. *See In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir.1986) ("[S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)."); *In re Harris*, 590 F.3d at 740 ("Under principles of constitutional avoidance, the otherwise broad 'catchall' provisions of bankruptcy court core jurisdiction should be interpreted narrowly . . . .").

By contrast, "[a]ctions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered non-core." *Sec. Farms*, 124 F.3d at 1008. In other words, an action is non-core when there is "not a cause of action created by title 11 or one that only arises in title 11 cases," even if the action "will affect the administration of the estate." *In re Eastport Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991). If the claims sought to be withdrawn are non-core and the Bankruptcy Court can not enter final judgment, then efficiency generally favors

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California

1    withdrawing the reference. *See In re Rosales*, 2013 WL 5962007, at *3 (N.D. Cal. Nov. 7, 2013).

2              In the instant case, Defendants seek to withdraw to this Court the fourth and fifth causes of

3    action alleged in the Trustee's adversary proceeding.  The fourth and fifth causes of action are for

4    breach of fiduciary duty and intentional interference with prospective economic advantage,

5    respectively. *See* Compl. ¶¶ 42–56.  These claims do not depend upon the bankruptcy laws for

6    their existence but rather are California common law claims that could have been brought in state

7    or federal district court. *See id.*; Opp. at 6 (acknowledging that claims are based on state law).

8    Such claims are generally considered non-core. *Sec. Farms*, 124 F.3d at 1008; *Dunmore v. United*

9    *States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (finding tax refund claims to be non core when the

10   claims "do not depend on Title 11 for their existence" and "the trustee could have brought them in

11   the district court").

12             Nevertheless, the Trustee asserts that the fourth and fifth causes of action are core because

13   these claims "occurred post-petition, directly damaging the estate and its creditors."  Opp. at 6; *see*

14   *also* Compl. ¶ 1 ("The claims in this complaint are core proceedings in that they . . . concern other

15   claims and matters arising out of the administration of the estate of Pacific Metro.").  According to

16   the Trustee, "[i]t is hard to imagine how a claim based on the theft of a Chapter 11 debtor's

17   business operations, occurring during the very course of the bankruptcy case and under the

18   bankruptcy court's nose, is not tied to the administration of the bankruptcy estate."  Opp. at 6.

19   Thus, the Trustee argues that the fourth and fifth causes of action involve "matters concerning the

20   administration of the estate" and accordingly are core under the catchall provision of 28 U.S.C.

21   § 157(b)(2)(A).

22             The Court is not persuaded by the Trustee.  The only connection between the fourth and

23   fifth causes of action and the administration of Pacific Metro's estate appears to be that, in the

24   absence of Defendants' alleged misconduct, additional funds may have been available to Pacific

25   Metro's creditors.  However, under Ninth Circuit law, an action is non-core when there is "not a

26   cause of action created by title 11 or one that only arises in title 11 cases," even if the action may

27   have some impact on the administration of the estate. *In re Eastport Assocs.*, 935 F.2d at 1077;

28

United States District Court
Northern District of California

7

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

1    *see also In re Tamalpais*, 451 B.R. at 11 (noting that though a claim may have "a profound impact

2    on the bankruptcy proceedings," it will nevertheless be non-core if it could have been brought in

3    the absence of a bankruptcy case).  Here, in the fourth cause of action, the Trustee alleges that

4    Mickelson "usurped various corporate opportunities belonging to [Pacific Metro]" in violation of

5    California common law, which "injured [Pacific Metro] in its business and property."  Compl.

6    ¶¶ 44–46.  In the fifth cause of action, the Trustee alleges that Art Brand Studios and Art Brand

7    Retail "intentionally interfered with an economic relationship between [Pacific Metro] and its

8    customers and potential customers, which if undisrupted, would have resulted in an economic

9    benefit to [Pacific Metro]."  *Id.* ¶ 52.  Such claims do not arise only in bankruptcy proceedings.

10   Indeed, these same allegations of breach of fiduciary duty and interference with prospective

11   economic advantage could be made even if Pacific Metro were not in bankruptcy.  Because the

12   fourth and fifth causes of action do not "only arise[] in title 11 cases" and are not "created by title

13   11," the claims are non-core.  *In re Eastport Assocs.*, 935 F.2d at 1077.

14          Moreover, the cases relied upon by the Trustee actually support finding that the fourth and

15   fifth causes of action are non-core.  For example, the Trustee cites *In re Harris*, 590 F.3d 730,

16   738–39 (9th Cir. 2009), in which the debtor alleged that the bankruptcy trustee's post-petition sale

17   of the estate's assets breached a contract.  The Ninth Circuit held that the state law breach of

18   contract claim against the trustee was core.  However, *In re Harris* did not hold that every claim

19   arising from post-petition conduct is core, as the Trustee appears to suggest.  *See* Opp. at 6.

20   Rather, *In re Harris* followed the Ninth Circuit's rule that "[a]ctions that do not depend on

21   bankruptcy laws for their existence and that could proceed in another court are considered non-

22   core."  *Sec. Farms*, 124 F.3d at 1008.

23          Specifically, the Ninth Circuit noted that the claim in *In re Harris* "is not a 'traditional'

24   contract action because the Settlement Agreement [that the debtor] claims was breached only

25   came into being post-petition[,] was made with the trustee and Special Representative of the

26   estate[,]" and "its terms directly related only to the administration of the bankruptcy estate."  *In re*

27   *Harris*, 590 F.3d at 741.  Thus, the Ninth Circuit found that the debtor's claim "could not exist

28

United States District Court
Northern District of California

8

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

1   independently of his bankruptcy case" and the sale of bankruptcy estate assets "*is* an

2   administrative activity of the bankruptcy trustee." *Id.* at 738, 740.  Thus, the debtor's claim was

3   core.  By contrast, in the instant case the fourth and fifth causes of action do not arise from any

4   actions taken by the Trustee in the bankruptcy and exist independent of the bankruptcy

5   proceeding.  *See* Compl. ¶¶ 44–46, 52.

6          The Trustee also cites a number of out of circuit district court cases, none of which are

7   binding upon this Court.  Moreover, none of these cases persuade the Court that the fourth and

8   fifth causes of action are core.  For example, the Trustee cites *In re Joseph DelGreco & Co.*, 2011

9   WL 350281 (S.D.N.Y. Jan. 26, 2011), in which the debtor sued for legal malpractice based on the

10  pre-petition conduct of its lawyers.  The district court held that the debtor's claims were non-core

11  because the claims were "traditional state law claims for legal malpractice . . . . independent of and

12  antecedent to the bankruptcy petition." *Id.* at *3.  While the district court noted that claims of

13  post-petition malpractice may be distinguishable, the district court did not find that post-petition

14  claims always concern the administration of the estate.  In fact, the district court in *DelGreco* held

15  that "the mere fact that recovery in a lawsuit could inure to the benefit of the estate or its creditors

16  does not render claims in that lawsuit core claims." *Id.* (citing *In re Orion Pictures Corp.*, 4 F.3d

17  1095, 1102 (2d Cir. 1993)).  Thus, *DelGreco* does not support the Trustee's argument that the

18  potential availability of funds for a debtor's creditors makes a claim core.

19         Because the fourth and fifth causes of action "do not depend on bankruptcy laws for their

20  existence and . . . could proceed in another court," the two claims are non-core and the Bankruptcy

21  Court is unable to enter final judgment on these claims. *Sec. Farms*, 124 F.3d at 1008.

22  Accordingly, efficiency favors withdrawal of the reference to this Court, which can enter final

23  judgment as to the fourth and fifth causes of action. *See Rosales*, 2013 WL 5962007, at *6.

24         The Court acknowledges that some courts have found that efficiency concerns weigh in

25  favor of denying withdrawal of non-core claims at the pretrial stage because non-core claims "may

26  be resolved before the matter is ripe for a trial before a jury," and the Bankruptcy Court may have

27  some familiarity with the matter at hand that renders its continued handling of the matter the most

28

9

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California

United States District Court
Northern District of California

1   efficient course of action. *See In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 267 (S.D.N.Y.

2   2012). However, where, as here, non-core claims completely overwhelm claims that can be

3   finally adjudicated in Bankruptcy Court, the matter is more likely to eventually come before this

4   Court and efficiency is best served by having the matter heard in the correct forum at the earliest

5   possible opportunity. *Cf. Sec. Farms*, 124 F.3d at 1008; *Rosales*, 2013 WL 5962007, at *6 & n.4

6   (withdrawing reference over non-core claims).

7          Further, nothing in the record indicates that the Bankruptcy Court has particular familiarity

8   with the issues and facts presented by the fourth and fifth causes of action. The Bankruptcy Judge

9   severed these two claims into a separate adversary proceeding on May 19, 2016 because these

10  claims are "factually, legally, and temporally distinct" from the other issues before the Bankruptcy

11  Court. *See* Defs. RJN. In addition, while Pacific Metro initially applied for bankruptcy on June 2,

12  2010, Defendants' alleged misconduct did not take place until 2015. Compl. ¶¶ 15, 20–23. The

13  Trustee points to no other claims against Defendants before the Bankruptcy Court. Accordingly,

14  the Court concludes that efficiency concerns favor withdrawal. *See id.*

15         **2.   Other Factors**

16         The Court now addresses the other considerations relevant to permissive withdrawal:

17  avoiding delay, avoiding excessive costs, preventing forum shopping, and ensuring uniformity of

18  the administration of the bankruptcy estate. In this case, "withdrawal will prevent delay and added

19  costs to the parties by placing the non-core claims in this Court, which can render final judgment."

20  *Rosales*, 2013 WL 5962007, at *7 (citing 28 U.S.C. § 157(c)(1)).

21         In addition, the prevention of forum shopping is not a concern here as only this Court has

22  the power to enter final judgment on the fourth and fifth causes of action. Therefore, even if the

23  Bankruptcy Court were to adjudicate these claims, this Court would have to conduct de novo

24  review to the extent that the losing party had any objections. *See In re Tamalpais*, 451 B.R. at 9

25  ("[N]either denying nor granting [the] motion [to withdraw reference] will facilitate forum

26  shopping here because a district court will ultimately need to address the issues, whether initially

27  or on de novo review of the bankruptcy court.").

28
                                              10

As to the uniform administration of the bankruptcy estate, the resolution of the fourth and fifth causes of action may impact the assets available for distribution to Pacific Metro's creditors. However, the Court concludes that any disruption to the uniform administration of the bankruptcy estate is outweighed by the efficiency that will result in withdrawing the Trustee's non-core claims to this Court. *See Rosales*, 2013 WL 5962007, at \*7 (withdrawing the reference as to non-core claims because uniform administration of the bankruptcy estate was outweighed by other factors); *see also In re Com 21*, 2005 WL 1606357, at \*11 (N.D. Cal. July 6, 2005) (same).

In sum, the Court concludes that permissive withdrawal of the fourth and fifth causes of action is warranted because both causes of action are non-core and efficiency favors withdrawal of the reference. *See* 28 U.S.C. § 157.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for withdrawal of the reference with respect to the fourth and fifth causes of action of the adversary proceeding. All further proceedings with respect to the fourth and fifth causes of action shall be held before this Court. The Trustee shall file an amended complaint with this Court within twenty-one (21) days.

**IT IS SO ORDERED.**

Dated: August 15, 2016

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

11

Case No. 16-CV-01322-LHK
ORDER GRANTING MOTION TO WITHDRAW REFERENCE

United States District Court
Northern District of California